# United States District Court
### for the
### Western District of New York

FILED
MAR 25 2015
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

| | |
|---|---|
| United States of America | ) |
| v. | ) 15-MJ-550 |
| IAN D. GOOLSBY | ) |
| *Defendant* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __March 11, 2015__ in the county of __Chemung__ in the Western District of New York, the defendant violated __21 and 18__ U.S.C. §§ __841(a)(1) and 924(c)(1)(A), 922(g)(1) and 922(k)__, offenses described as follows:

the defendant, knowingly possessed, with intent to distribute, heroin and was in possession of a firearm in furtherance of a drug trafficking crime and knowingly possessed said firearm being a felon and knowingly possessed said firearm which has had the manufacturer's serial number removed, obliterated or altered.

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

*Complainant's signature*
GERARD M. O'SULLIVAN, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __March 25, 2015__

*Judge's signature*

City and State: __Rochester, New York__   Hon. Jonathan W. Feldman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

15-MJ- 556

v.

AFFIDAVIT

IAN D. GOOLSBY,

Defendant.

STATE OF NEW YORK)
COUNTY OF MONROE) SS:
CITY OF ROCHESTER )

**AFFIDAVIT IN SUPPORT
OF A CRIMINAL COMPLAINT**

GERARD M. O'SULLIVAN, BEING DULY SWORN DEPOSES AND SAYS:

1. Your affiant has been employed as a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives for over twenty two years. Your affiant has attended the Department of Homeland Security's Criminal Investigator School, and the ATF National Academy. Through these schools your affiant has received specific instruction of federal firearms laws. During your affiant's tenure with ATF, your affiant has written numerous affidavits in

support of criminal complaints involving violations of the federal firearms laws.

2. This affidavit is written in support of a criminal complaint against Ian D. GOOLSBY, charging him with violations of Title 21, United States Code, Section 841(a)(1) (possession of a controlled substance with intent to distribute); Title 18, United States Code, Section 924 (c)(1)(A) (possession of a firearm in furtherance of a drug trafficking crime); Title 18, United States Code, Section 922 (g)(1) (knowing possession of a firearm by a felon); and Title 18, United States Code, Section 922 (k), (knowing possession of a firearm which has had the manufacturer's serial number removed, obliterated or altered). The assertions made herein are based solely upon the personal knowledge of your affiant or upon information I have received from this investigation, including various police reports produced in relation to the arrest of GOOLSBY, discussions with other law enforcement agents, all of which are true and correct to the best of my knowledge and belief. Further, I have had discussions with other law enforcement agents who have confirmed the accuracy of the information contained within this affidavit.

## PROBABLE CAUSE

3. Your affiant has become aware that on March 11, 2015, Elmira Police Department Officer David Miller stopped a blue 2015 Chevrolet Cruz bearing

New York registration GCA2488 at the intersection of Madison Avenue and E. 5th Street in Elmira, New York. Officer Miller identified the driver of the vehicle as Ian D. GOOLSBY. Officer Miller stopped the vehicle because GOOLSBY failed to properly signal his intent to turn his car at the intersection of College Avenue and West 5th Street in Elmira, New York.

4. Officer Miller informed GOOLSBY about the reason for the stop. GOOLSBY responded, "Oh yeah your right, I'm sorry." Officer Miller could smell an odor of marijuana coming from the car when he continued to speak with GOOLSBY. Officer Miller also spoke with the front seat passenger in the vehicle, Susan Henry, in order to obtain her name and identification. While talking to Henry, Officer Miller could still smell marijuana coming from the vehicle. Officer Miller asked GOOLSBY and Henry about the marijuana odor in the vehicle. GOOLSBY said, "It's on my clothes, I smoked it earlier." Given the responses and the smell of marijuana, Officer Miller decided to search the vehicle.

5. Officer Miller asked GOOLSBY to exit the vehicle. Officer Miller observed that GOOLSBY visibly tensed his muscles and said, "No. Why do you need to search my car." [sic] GOOLSBY added that he wanted to speak with Officer Miller's supervisor when Officer Miller again told him about the smell of marijuana. Officer Miller explained that GOOLSBY would have that opportunity and, again, asked GOOLSBY to step from the vehicle. GOOLSBY

demanded to speak with Officer Miller's supervisor immediately. Officer Miller said that he was willing to call his supervisor to the scene and explained that GOOLSBY still needed to exit the vehicle. At this point, GOOLSBY complied. Officer Miller conducted a pat frisk of GOOLSBY for officer safety reasons and found nothing. Officer Miller noted that GOOLSBY began breathing more rapidly and was not able to follow simple instructions, such as instructions to place his hands on his head, without being told to do so multiple times. Officer Miller then asked GOOLSBY to stand with another Elmira Police Department officer at the rear of the car. Officer Miller also asked Henry to exit the vehicle and Henry was given a pat frisk as well for officer safety. She said that she did not have anything in her possession, which was confirmed by the pat-frisk. Officer Miller then searched the vehicle GOOLSBY was driving.

6. In doing so, Officer Miller saw a green vegetation substance between the passenger seat and passenger door in the carpet. He also saw a brown Nike shoe box on the passenger side floor. Officer Miller opened the shoe box and noticed a yellow plastic bag inside. Officer Miller opened the yellow plastic bag and noticed several small ziplock baggies. Officer Miller knew from his training, knowledge, and experience that small ziplock baggies are used in narcotics distribution. Officer Miller also noticed a red rag inside the yellow plastic bag wrapped around a bulky object having characteristics of a handgun. Officer Miller unwrapped the red rag and discovered a silver colored handgun, which he ultimately determined to be safe and empty. This handgun is more

specifically described as a Ruger, Model P90, .45 caliber semi-automatic pistol. The serial number appeared to have been removed or obliterated. Officer Miller also discovered a .45 caliber ammunition magazine loaded with six (6) .45 caliber rounds of ammunition, which was stored in the bag with the handgun. Law enforcement secured these items and placed GOOLSBY and Henry in handcuffs and placed them in police cars.

7. Officer Miller continued searching the vehicle and discovered a black insulated bag containing white uncooked rice. Inside of this, Officer Miller saw a plastic bag buried inside the rice. He opened the bag and noticed multiple stacks of glassine envelopes bearing a stamp saying "dead man walking." There were a total of forty-one (41) of these envelopes. Officer Miller observed a powdery substance inside the glassine envelopes. Officer Miller also found a Western Union letter addressed to GOOLSBY in the driver's side door. Officer Miller also found male clothing inside luggage bags in the trunk. Officer Miller asked GOOLSBY who owned these items and GOOLSBY acknowledged the items in the car were his. Furthermore, Officer Miller learned that the vehicle which GOOLSBY was driving was owned by PV Holding Corp. PV Holding Corp. informed law enforcement that the vehicle was rented to Shawn M. Steers of Spring Harris, Texas, and that GOOLSBY was not on the rental agreement. PV Holding Corp. sent a representative to retrieve the vehicle. Subsequent investigation conducted by Elmira Police Department Investigator Jeremy Oakes revealed that the vehicle was rented by Chaundra Brown in Rochester,

New York, on or about March 6, 2015, from Avis Rent A Car. Your affiant has learned by speaking with a representative of Avis Rent A Car that PV Holding Corp. is the parent company of Avis Rent A Car.

8. Once back at the Elmira Police Department, Officer Miller processed the handgun and ammunition magazine for latent fingerprints. He found no latent fingerprints on the handgun or the ammunition magazine. Later that same day, Elmira Police Department Investigator Jeremy Oakes conducted a field test on the powdery substance. This field test returned a positive result for the presence of heroin. Also, Officer Miller performed a field test on the green vegetation which he observed in the car. The test returned a positive result for the presence of marijuana.

9. On March 11, 2015, Henry spoke with law enforcement and said that, in sum and substance, GOOLSBY, her boyfriend, had picked her up in the vehicle at her house on Decker Place to take her to the Dandy Minimart on E. Church Street. She also said, among other things, 'Ian said that he had to "Get on the road", [sic] which I took to mean that he was traveling back home. Ian doesn't live in the area, so when he said that I thought he must be driving back home.' She also said, among other things, "When I got in the car, I only brought my phone with me, all the other stuff in the car was already in there, before I got in. I then got in the front passenger seat, and Ian drove me to the Dandy." She also

stated, among other things, "I at no time brought any heroin or a gun into the car, nor have I ever known Ian to be associated with guns."

10. In assisting in this investigation, Investigator Oakes asked GOOLSBY who owned the car. GOOLSBY said that the car was rented by the mother of his child and that he had possession of the car on and off over the last two days. GOOLSBY denied any knowledge about what was inside of the vehicle. It should be noted that officers did not issue <u>Miranda</u> warnings to GOOLSBY at any time prior to time he made these statements.

11. On March 13, 2015, Elmira Police Investigator Daniel Vandine examined the firearm recovered from the vehicle GOOLSBY was driving on March 11, 2015. He conducted a test-fire of the firearm and found it to be operable in that it discharged a .45 caliber bullet as designed. The firearm involved in the above-described transaction meets the definition of a firearm as per Title 18, United States Code, Section 921(a)(3) because it was designed to expel a projectile by the action of an explosive. This firearm was not manufactured in the State of New York and consequently would have affected interstate commerce.

12. Based upon my training and experience, as well as the recovery of the heroin and the .45 caliber semiautomatic pistol, your affiant believes that GOOLSBY possessed the firearm in furtherance of heroin distribution. Further, based upon

my training and experience, the packaging of the heroin seized is consistent with re-sale or distribution and not personal use.

13. Your affiant reviewed the criminal history of GOOLSBY and learned that GOOLSBY had a criminal record in Virginia and New York. GOOLSBY's criminal record shows he was convicted on or about May 30, 2007, in Shenandoah, Virginia Circuit Court, of Sale and Distribution of Marijuana, a felony. He received a sentence of three (3) years in prison with two (2) years and eight (8) months of the sentence suspended. GOOLSBY's criminal record also shows that he was convicted on or about February 25, 2008, in Chemung County Court, Chemung County, New York, of Criminal Sale of a Controlled Substance in the Third Degree, a class B felony. He received a sentence of four (4) years in prison and two (2) years of post-release supervision. GOOLSBY's criminal record also shows that he was convicted on or about April 8, 2002, in Monroe County Court, Monroe County, New York, of Criminal Possession of a Controlled Substance in the Fifth Degree, a class D felony. He received a sentence of two (2) to four (4) years of parole supervision. GOOLSBY's criminal record also shows that he was convicted on or about October 18, 1999, in Onondaga County Court, Onondaga County, New York, of Criminal Possession of a Controlled Substance in the Fourth Degree, a class C felony. He received a sentence of five (5) years of probation supervision.

14. Based on the forgoing facts your affiant believes probable cause exists that Ian D. GOOLSBY violated Title 21, United States Code, Section 841(a)(1) (possession of a controlled substance with intent to distribute); Title 18, United States Code, Section 924 (c)(1)(A) (possession of a firearm in furtherance of a drug trafficking crime); Title 18, United States Code, Section 922 (g)(1) (knowing possession of a firearm by a felon); and Title 18, United States Code, Section 922 (k), (knowing possession of a firearm which has had the manufacturer's serial number removed, obliterated or altered).

_____
GERARD M. O'SULLIVAN
ATF Senior Special Agent

Sworn and subscribed before me
this 25 day of March, 2015

_____
HON. JONATHAN W. FELDMAN
United States Magistrate Judge

9