**UNITED STATES DISTRICT COURT**
**<u>WESTERN DISTRICT OF NEW YORK</u>**

**UNITED STATES OF AMERICA**            **15 CR 6095 (CJS/JWF)**

      v.            **POST-HEARING SUBMISSION**
            **REGARDING MOTION TO**
            **SUPPRESS EVIDENCE**

**IAN GOOLSBY,**

            **Defendant.**

___

On February 1, 2016, an evidentiary hearing was held in this case to determine the defense's Motion to Suppress Tangible Evidence (Docket # 12). At issue was the search of defendant Ian Goolsby's vehicle on March 11, 2015, by Officer David Miller from the Elmira Police Department. Miller conducted a traffic stop of Goolsby's 2014 Chevrolet Cruz in Elmira, New York. Miller searched the vehicle and seized a handgun, several baggies of heroin, a small amount of marijuana, and mail addressed to Goolsby. The defense argues that the stop and search of the vehicle and its contents was illegal and any evidence seized as a result of the stop should be suppressed from evidence at trial.

*The Traffic Stop*

Officer Miller did not have reasonable suspicion to stop Goolsby's car in the first place. Initially, he stated that the reason that he stopped the car was that the driver failed to signal 100 feet from a stop sign at a "T" intersection. (Tr. 35, 65). However, the Court seemed to reject this argument at the hearing (Tr. 78) and seemed to rely on the government's position that there may have been reasonable suspicion or probable cause to stop and search the vehicle because the passenger, Susan Henry, was texting Elmira Police Officer Ronald Gunn that there was a firearm in the car by her feet. (Tr. 11, 78). Henry's texts to Gunn caused him to alert other members of

1

the Elmira Police, which ultimately led to Officer Miller pulling over and searching Goolsby's car.

The Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Accordingly, the Fourth Amendment requires that such seizures be, at a minimum, "reasonable." Id. In order to satisfy the Fourth Amendment's strictures, an investigatory stop by the police may be made only if the officer in question has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot . . . ." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

The Elmira Police did not have reasonable suspicion to stop Goolsby's vehicle. The sole reason for stopping the car was derived from Susan Henry's text to Officer Gunn. This is what Officer Miller stated at the hearing (Tr. 65). However, Henry was clearly biased against Goolsby. Gunn stated that she previously called him and told him that Goolsby was staying at the Holiday Inn with another female and had a gun there (Tr. 10). Gunn told Henry that he couldn't kick the door of the hotel room open, but that she should contact him when he was "out and about with the handgun." (Tr. 11). Henry did exactly this with her texts. Gunn knew that Henry and Goolsby were in a romantic relationship (Tr. 26) and clearly this relationship had soured. Gunn even said that he assumed that Henry had contacted him about the Holiday Inn incident because she was angry that Goolsby was with another female (Tr. 29). Taken with the fact that Officer Miller found the gun between Henry's feet in the car (Tr. 72), it is clear that Henry was setting Goolsby up in this case. The police did not have reasonable suspicion to believe that a crime was taking place as much as reason to believe that Henry was setting Goolsby up to be arrested and charged

for the gun. As evidence of this, Henry was worried that her identity as the tipster would be revealed, according to Gunn (Tr.17).

In addition to her motive to incriminate Goolsby, Henry also had previous encounters with law enforcement that Gunn had known about. Gunn stated that he knew that she had a felony drug conviction, a possible forgery arrest and "maybe weapons charges" (Tr. 20). In addition, Gunn said that he was "friends" with Henry. (Id). Henry's previous record of *crimen falsi* offenses shows she should not have been trusted or relied on as a source of information, and her relationship with Gunn is problematic. Gunn's responses to Henry's texts also no longer existed because they were deleted. (Tr. 29). It is not known what Gunn's responses to Henry's text were as only her half of the conversation exists. Henry's close relationship with Gunn, her souring romantic relationship with Goolsby and her own history of crimes and arrests make her an unreliable and biased informant. Because of these issues (that Gunn knew about at the time) he should not have had Miller stop Goolsby's vehicle as Henry was an unreliable informant.

When the existence of probable cause is alleged to rest in part on an informant's tip, a court must engage in a "totality-of-the-circumstances" analysis. *Illinois v. Gates*, 462 U.S. 213 (1983). In *Gates*, 462 U.S. at 230, the Supreme Court stated:

> an informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case . . . . [T]hey should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" . . . .

See also *U.S. v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007) ("[T]he informant's 'basis of knowledge' and 'veracity' (i.e., how he knows and why we should believe him) remain highly relevant to a determination of either probable cause or reasonable suspicion."). Explaining *Gates*, the Second Circuit explained that "[i]nformation about criminal activity provided by a single

3

complainant can establish probable cause when that information is sufficiently reliable and corroborated." *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994) (citing *U.S. v. Wagner*, 989 F.2d 69 (2d Cir. 1993)). In this case, Henry's texts to Officer Gunn were neither reliable nor corroborated, nor were they given without bias. Henry's information surely did not give rise to reasonable suspicion. For this reason, the stop of Goolsby's vehicle was violative of the Fourth Amendment and case law and the fruits of the search should be suppressed from evidence.

*The Search of the Vehicle*

After Goolsby's vehicle was pulled over, Officer Miller proceeded to arrest Goolsby and and then search the vehicle (Tr. 46). His rationale for the arrest (presumably) was that he smelled burning marijuana and Goolsby admitted to smoking marijuana earlier. However, Miller only found residue of unburned marijuana in the car (Tr. 69). There was no testimony that he smelled fresh (unburned) marijuana or otherwise found burned marijuana. Id.

The Supreme Court's holding in *Arizona v. Gant,* 556 U.S. 332 (2009*),* permits a "search of a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search[, or] . . . . when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" 129 S.Ct. at 1719, *quoting Thorton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring). Goolsby and Henry were both taken away from the vehicle before it was searched and did not have the ability to interfere with its contents. Thus, the vehicle was secure when it was searched and the exception to search carved out by *Gant* would not apply here.

The automobile search warrant exception "permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband." *United States v. Navasi*, 597 F.3d 492, 497 (2d Cir. 2010). The

Supreme Court has explained that, "the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant." *United States v. Ross*, 456 U.S. 798, 825 (1982). Yet, before the search of the vehicle can be undertaken, under this exception, probable cause must first exist. In this case, Henry's texts to the police and the smell of burned marijuana (which Goolsby admitted to smoking beforehand) cannot give rise to probable cause for a search of the vehicle. Thus, Officer Miller's search was done without a warrant and without probable cause and does not fall into any exceptions to the warrant requirement. For the above reasons, the handgun, drugs and identifying mail seized in the search of Goolsby's vehicle should be suppressed because the stop of the vehicle and its search were completed without reasonable suspicion or probable cause.

Dated:  April 18, 2016
Rochester, New York

                                                Respectfully submitted,

                                                  /s/Steven Slawinski
                                                Steven Slawinski
                                                Assistant Federal Public Defender
                                                28 E. Main Street, Suite 400
                                                Rochester, New York 14614
                                                585-263-6201
                                                Steven_Slawinski@fd.org
                                                Attorney for Ian Goolsby

To: Charles Moynihan, AUSA