**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

v.

IAN GOOLSBY,

Defendant.

**REPORT AND**
**RECOMMENDATION**
15-CR-6095 (CJS)

### Preliminary Statement

On January 26, 2015, defendant Ian Goolsby (hereinafter "Goolsby" or "defendant") was indicted by superseding indictment by the Federal Grand Jury on charges of possession of heroin with intent to distribute (Count I), possession of firearm in furtherance of a drug trafficking crime (Count II), felon in possession of a firearm and ammunition (Count III), possession of a firearm with removed, altered and obliterated serial number (Count IV), and possession of a controlled substance – marijuana (Count V).[1] See Superseding Indictment (Docket # 16).

On August 3, 2015, the defendant filed omnibus motions, including the instant motion to suppress evidence. See Docket # 12. The Government filed a response on August 14, 2015. See Docket # 13. Defendant filed an additional affidavit in support of his motion to suppress on August 27, 2015. See Docket # 14. On December 15, 2015, the Court heard arguments from counsel and

---

[1] The Indictment also contains forfeiture counts relating to the seizure of two semi-automatic pistols and .45 caliber ammunition.

resolved the majority of defendant's omnibus motions on the record. See Docket # 15. The Court reserved decisions on the defendant's motions for suppression of evidence and statements. The Court held an evidentiary hearing on February 1, 2016 and two government witnesses testified. See Docket # 17. Thereafter, the defendant filed a post-hearing submission on April 11, 2016 (Docket # 20), and the government responded on June 3, 2016 (Docket # 26). The following is my Report and Recommendation for defendant's motions to suppress.

## Relevant Facts

Goolsby seeks to suppress statements made and evidence seized during the search of the 2015 Chevy Cruz automobile he was operating on March 11, 2015.[2] Goolsby argues that the stop and subsequent search of the vehicle and its contents violated the Fourth Amendment.

The facts surrounding the stop of Goolsby and the search of

---

[2] "The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an expectation of privacy in the place search." United States v. Hagg, 278 F.3d 44, 47 (2d Cir. 2002). Goolsby was not the owner of the 2015 Chevy Cruz sedan, but "was given permission to use the car by [his] friend, Chaundra Brown, who had rented the car on March 6, 2015." See Affidavit of Ian Goolsby (Docket # 14). Accordingly, the defendant has standing to contest the stop of the vehicle. See United States v. Baker, No. 07-CR-126A (SR), 2009 WL 6594328, at *1 (W.D.N.Y. Dec. 17, 2009), report and recommendation adopted, No. 07-CR-126A, 2010 WL 2465533 (W.D.N.Y. June 14, 2010) (stating that standing is demonstrated by submission of an affidavit demonstrating a legally cognizable privacy interest in the searched premises).

the vehicle are largely undisputed. On March 11, 2015 at 10:03 A.M., Investigator Ronald Gunn of the City of Elmira Police Department began receiving text messages on his work issued cell phone from a telephone number he knew to be used by Susan Henry.[3] See Hearing Exhibit # 1; see also Hearing Transcript ("Tr.") 10-16, 21. Henry had been Gunn's neighbor and a friend of Gunn's girlfriend, however Henry had since moved from the neighborhood and Gunn no longer had occasion to see Henry socially.

The first text message Henry sent to Investigator Gunn stated "he's in front of house practically." Hearing Exhibit # 1. Gunn testified that he knew that Henry was talking about Goolsby because of past interactions with Henry. See Tr. at 10, 20. Henry had discussed Goolsby with Gunn about three weeks prior to March 11, 2015. During that conversation, Henry told Gunn that Goolsby "possibly" possessed a handgun and was "staying at the Holiday Inn." Tr. at 10, 21. Gunn assumed that Henry and Goolsby were involved in a romantic relationship and that Henry was angry that Goolsby was at a hotel. Tr. at 29. During the earlier conversation, Investigator Gunn gave Henry his work cell phone number and told her to contact him if Goolsby was "out and about with the handgun." Tr. at 11. Gunn testified that Henry had previously provided reliable

_____

[3] The text messages did not state who they were from, but Investigator Gunn testified that the telephone number looked familiar to him, and "as soon as [he] started reading the first few [he] realized who they were from". Tr. at 15.

information to law enforcement officers and he knew that Henry had a criminal record. Tr. at 17-20.

During the suppression hearing, Investigator Gunn was shown copies of several text messages he received from Henry at around 10:00 A.M. After reviewing "screen shots" of the messages, Gunn testified that Henry was informing him that Goolsby was in front of her house, was getting ready to leave, and had heroin in a black lunch bag. Gunn testified that he then called Elmira Police Investigator Jeremy Oakes in the Drug Enforcement Unit with the information he had learned from Henry's text messages. Tr. at 16; Hearing Exhibit # 1.

Upon receiving the information from Investigator Gunn, Investigator Oakes contacted Officer David Miller to assist in the investigation. Miller testified that Investigator Oakes told him "that they had a confidential informant who told them that a vehicle was going to be operated by an Ian Goolsby, and inside the vehicle was going to be a handgun and a quantity of narcotics in a brown or a black lunchbox." Tr. at 33. Oakes told Miller the make, model, plate number and color of the car and the two of them established surveillance positions near Henry's house on Decker Place in the City of Rochester. Tr. at 32, 40-41, 49.

Miller set up his surveillance position on College Avenue to watch for the vehicle. Tr. at 32-33. Soon thereafter,

4

Miller saw the vehicle that Oakes had described turn onto
College Avenue. Tr. at 34. Officer Miller observed the Chevy
Cruz approach the intersection of College Avenue and Fifth
Street, stop, and then turn onto Fifth Street without timely
activating a turn signal. According to Miller, the failure to
activate the turn signal was a violation of the New York State
Vehicle and Traffic Law.[4] Id. Miller conducted a traffic stop
on the vehicle.

As Officer Miller approached the vehicle, he spoke with
Goolsby through an open window. Miller introduced himself to
Goolsby, asked for his license, and informed Goolsby that he was
pulled over for failing to properly signal a turn. Goolsby
responded by stating that he was sorry and admitted he had not
signaled. Goolsby told Officer Miller that he did not have his
license with him. According to Miller, as he approached the
vehicle and began speaking with Goolsby he saw a brown shoebox
on the front passenger floor and a black lunch box "in the rear
driver's side passenger seat." Tr. at 49. Miller told Golsby
that he smelled marijuana. Tr. at 41-45. Goolsby responded
that he had smoked marijuana earlier. Tr. at 46. Officer
Miller then walked over to the passenger side of the vehicle and
obtained "pedigree information" from Henry, who was seated in

---

[4] "A signal of intention to turn right or left when required shall
be given continuously during not less than the last one hundred
feet traveled by the vehicle before turning." NYS Veh. & Traf. Law
§ 1163(b).

the front passenger seat. Tr. at 46.

After other officers arrived at the scene, Miller asked Goolsby and Henry to step out of the vehicle so it could be searched. At this point, according to Miller, Goolsby, who had been "very calm and very cooperative," became "visibly tensed up and seemed much more combative." Tr. at 47. Goolsby told Miller he wanted to speak with Miller's supervisor. Miller told Goolsby "he could do that" but "he would still have to get out of the vehicle for it to be searched." Id. Officer Miller opened the door, asked Goolsby to exit the vehicle, and Goolsby complied. Miller then searched the car. He testified he found "green vegetation" material consistent with marijuana in the carpet area between the passenger seat and the passenger door, a brown shoebox containing a gun located on the floor in front of the front passenger's seat, and a black lunch box found in the rear driver's side area. Inside the lunch box was "a bunch" of small plastic bags containing a substance Miller believed to be heroin. Tr. at 49-51, 54, 70. Miller said police continued to search the vehicle and determined it was a rental car. The rental agency was notified to retrieve the car and all personal property was removed from the car by police. This property included men's clothing and "a Western Union that was addressed to an Ian Goolsby." Tr. at 56.

6

## Discussion

Goolsby seeks to suppress evidence of the marijuana, the gun and the heroin seized from the 2015 Chevy Cruz on March 11, 2015. According to Goolsby, the traffic stop of the vehicle by Officer Miller was illegal under the Fourth Amendment because Miller did not have reasonable suspicion to stop the car.[5] Goolsby also contends that the statements he made to the police during the encounter must be suppressed as a "fruit" of the unconstitutional stop. See Defendant's Post-Hearing Submission (Docket # 20) at 1-4. For the reasons that follow, I disagree.

Stop of Vehicle: The relevant law to determine the legality of the stop of the vehicle Goolsby was driving is set forth in the Second Circuit's decision in United States v. Wilson, 699 F.3d 235 (2d Cir. 2012):

> The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const.

---

[5] Officer Miller testified that although he initiated a traffic stop because of the traffic violation, he would have stopped the car whether or not defendant had properly signaled at the stop sign. Tr. at 35-37. It is well-settled that "a police officer who observes a traffic violation may stop a car without regard to what a 'reasonable officer' would do under the circumstances and without regard to the officer's own subjective intent. In other words, an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance." United States v. Dhinsa, 171 F.3d 721, 724-25 (2d Cir. 1999) (citing Whren v. United States, 517 U.S. 806, 813, 815-19 (1996)) (internal citations and quotations omitted). Though the law is clear regarding the reasonableness of a pretextual traffic stop, the Court analyzes the reasonableness of the stop based on the information Henry provided to Investigator Gunn.

7

amend. IV.    This protection extends to vehicle stops.
Whren v. United States, 517 U.S. 806, 809-10 (1996).
"[T]he Fourth Amendment requires that an officer
making a traffic stop have probable cause or
reasonable suspicion that the person stopped has
committed a traffic violation or is otherwise engaged
in or about to be engaged in criminal activity."
United States v. Harrison, 606 F.3d 42, 45 (2d Cir.
2010) (citation and internal quotation marks omitted).
Probable cause to make a stop exists when an officer
"has knowledge or reasonably trustworthy information
of facts and circumstances that are sufficient to
warrant a person of reasonable caution in the belief
that the [suspect] has committed or is committing a
crime."    United States v. Delossantos, 536 F.3d 155,
158-59 (2d Cir. 2008) (internal quotation marks
omitted).

United States v. Wilson, 699 F.3d at 242.

Here, Goolsby argues that the texts from Susan Henry did

not create reasonable suspicion or probable cause to stop the

vehicle because (1) Henry was "clearly biased" against Goolsby

and was "setting him up" because their romantic relationship had

"soured," and (2) Henry was unreliable because she had prior

encounters with law enforcement.    In the context of ascertaining

probable cause, Goolsby's arguments are without merit.

A tip from an informant of proven reliability can establish

probable cause for an arrest, and the informant's own criminal

background does not prevent the police from reasonably relying

upon the information the informant provides.    See United States

v. Brown, 500 F.3d 48, 54-56 (1st Cir. 2007).    Here,

Investigator Gunn was sent several text messages which informed

him that the sender of the texts, Susan Henry, was presently

with Goolsby and she knew Goolsby was then in possession of
heroin and a handgun. See Hearing Exhibit # 1. Investigator
Gunn knew Henry, knew that Henry was in a relationship with
Goolsby, knew that Henry had previously supplied reliable
information to the police and, indeed, weeks earlier Henry had
spoken to Gunn about Goolsby's possible possession of a firearm.
Thus, this is not a case of an unknown anonymous tipster
providing information to police. Henry herself was known to
Gunn, Henry's relationship to Goolsby was known to Gunn, and
Henry's reason for wanting to provide incriminating information
about Goolsby was known to Gunn. Given the facts present here,
it was reasonable for Gunn and the other members of the Elmira
Police Department to whom Investigator Gunn transmitted the
information to rely on the accuracy of the information received
from Henry.

> [W]hile information from an anonymous informant
> generally requires some sort of corroboration to be
> considered reliable, see Florida v. J.L., 529 U.S.
> 266, 270-71 (2000), "[w]here informants are known [to
> the officer], . . . a lesser degree of corroboration
> is required." United States v. Elmore, 482 F.3d 172,
> 180 (2d Cir. 2007).

United States v. Singleton, 608 F. Supp. 2d 397, 403 (W.D.N.Y.
2009); see Navarette v. California, 134 S.Ct. 1683, 1689 (2014)
("[Eyewitness] knowledge lends significant support to the tip's
reliability."). At the very least, Investigator Gunn's receipt
of the text messages from Henry provided reasonable suspicion to

9

stop Goolsby's car and investigate further. Certainly Officer Miller knew enough about Goolsby to possess "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)); see United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) ("The court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene.") (internal quotations marks omitted).

Goolsby's argument that Henry had a motive to "set him up" and that her previous police contact made the information she provided unreliable is without merit under the facts presented here. Henry's relationship with Goolsby made her texts more, not less credible, and while Henry was known to law enforcement, she was also known to have previously provided credible information. Known-informant reliability is presumed, in part, because their reputation may be assessed and they may be "held accountable if [the] information proves false." United States v. Salazar, 945 F.2d 47, 50-51 (2d Cir. 1991); see Florida v. J.L., 529 U.S. at 270 ("[A] tip from a known informant whose reputation can be assessed [] can be held responsible if her allegations turn out to be fabricated."). In sum, it is my Report and Recommendation that the stop of the vehicle Goolsby's was driving did not violate the Fourth Amendment.

The Search of the Vehicle:   The Government has argued two
alternate grounds under which the search of Goolsby's vehicle
was reasonable.    First, they argue that upon approaching the
vehicle, Miller smelled burned marijuana.    Believing that there
could be evidence relevant to a crime in the vehicle, Miller
arrested Goolsby and then searched the vehicle incident to that
arrest.    The second independent argument is that as Miller was
speaking with Goolsby and Henry through the windows, he observed
a shoebox on the floor of the passenger seat and a black lunch
box on the backseat.    Knowing that these objects corroborated
the information from Henry that there would be a gun at her feet
and heroin in a black lunch box, Miller had probable cause to
search the vehicle.    See Government's Post-Hearing Memorandum
(Docket # 26) at 9-15.

In Arizona v. Gant, 226 U.S. 332 (2009), the Supreme Court
held that law enforcement may search a vehicle incident to an
arrest of an occupant: (1) "when the arrestee is unsecured and
within reaching distance of the passenger compartment at the
time of the search" or (2) "when it is reasonable to believe
evidence relevant to the crime of arrest might be found in the
vehicle."    Id. at 343 (internal quotations and citations
omitted).

The first rationale is not present here, however I find
Gant's second rationale justifies the warrantless search of the

11

vehicle.    As Miller approached Goolsby's vehicle, he smelled
burnt marijuana.    Tr. at 43-44.    When Miller mentioned the odor,
Goolsby said that he had smoked marijuana earlier.    Tr. at 46.
At that point, Miller had sufficient basis to arrest Goolsby,[6]
and search the car for evidence related to the crime of smoking
or possessing marijuana.    See, e.g., United States v. Dixon, No.
09-CR-6046,  2010  WL  3167381,  at  *2  (W.D.N.Y.  May  26,  2010)
report  and  recommendation  adopted,  No.  09-CR-6046L,  2010  WL
3167380  (W.D.N.Y.  Aug.  10,  2010)  (applying  Gant  where  officer
smelled marijuana, defendant admitted to smoking marijuana, and
officer saw a marijuana cigarette in the vehicle because it was
reasonable to expect that there might be additional drugs in the
vehicle).    The  search  reasonably  included  the  shoe  box  on  the
floor of the passenger's seat and the black lunch box on the
back  seat  as  containers  within  the  automobile  that  may  have
contained  drugs.    See  Arizona  v.  Gant,  556  U.S.  at  347  ("If
there is probable cause to believe a vehicle contains evidence
of criminal activity, United States v. Ross, 456 U.S. 798, 820-
21  (1982)  authorizes  a  search  of  any  area  of  the  vehicle  in
which the evidence might be found.").

     The  search  of  the  vehicle  can  be  independently  justified
pursuant to the so called "automobile exception" to the search

_____

[6] Although the original complaint did not charge Goolsby with a
marijuana-related offense, he was subsequently indicted for, inter
alia, possession of controlled substance - marijuana.

warrant requirement. The automobile exception "permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband." United States v. Navas, 297 F.3d 492, 497 (2d Cir. 2010). "If the probable cause extends to the entire vehicle, the agent may conduct a warrantless search of 'every part of the vehicle and its contents including all containers and packages that may conceal the object of the search.'" United States v. Harwood, 998 F.2d 91, 96 (2d Cir. 1993) (quoting United States v. Ross, 456 U.S. at 825 (alteration in original) (additional citations omitted)).

Officer Miller testified that as he approached the vehicle and spoke with the defendant through the open driver's window, he observed "a brown shoebox as described sitting on the front passenger floor, and there was a black lunch box in the rear driver's side passenger seat." Tr. at 49. The car being legally seized based on Henry's tips, Miller's observations were justified. See Harris v. United States, 390 U.S. 234 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."). Officer Miller knew from the information provided by Investigator Gunn that he was looking for heroin in a black lunch bag and a gun in a box at the passenger's feet, which is

13

exactly what he saw.      Having personally corroborated specific details of Henry's text messages, Officer Miller had probable cause to search the vehicle and the containers therein.      There being no constitutional violation, it is my Report and Recommendation that Goolsby's motion to suppress the search of the vehicle should be **denied.**

Suppression of Defendant's Statements:   The defendant's post-hearing brief did not address the statements he allegedly made to Officer Miller after the Chevy Cruz he was driving was stopped, but to the extent he still seeks suppression, the Court will briefly address the issue.    At the hearing, Officer Miller testified that Goolsby stated the following: that he did not have his license on him; that he said "you're right, I'm sorry" when Miller told him that he had failed to signal prior to 100 feet of making a turn; that defendant "stated he had been smoking [marijuana] earlier"; and that Goolsby asked at least three times to see or speak with Miller's supervisor.   Tr. at 41-47.   These statements were made while Goolsby was seated in the driver's seat of the car except for the two repetitions of asking to speak to a supervisor which occurred after Goolsby had stepped out of the car.   Id.   These statements were made by Goolsby during the course of the stop and were not preceded by Miranda rights.   Tr. at 69.   At this point in the encounter, Officer Miller had not restrained or handcuffed Goolsby or done

14

or said anything to him indicating that he was under arrest.

Law enforcement officers are required to give Miranda warnings before questioning a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). The test for custody is an objective one based on the totality of circumstances surrounding the particular encounter at issue. See Stansbury v. California, 511 U.S. 318, 323 (1994). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

It is well established that a motorist, stopped briefly on the side of the road for a traffic offense, and asked "a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions," is not considered in "custody" for the purposes of Miranda. Berkemer v. McCarty, 468 U.S. at 439; see also United States v. FNU LNU, 653 F.3d 144, 150 (2d Cir. 2011) (reaffirming Berkemer and stating that the officer's "unarticulated plan" to arrest the suspect has no bearing on the determination of custody). Moreover, even if an individual is determined to be in custody, a statement may only be suppressed if it was made pursuant to police "interrogation." Rhode Island v. Innis, 446 U.S. 291 (1980). The test for determining whether the conduct

15

of law enforcement agents amounted to interrogation is whether the words or actions of law enforcement agents "were reasonably likely to elicit an incriminating response." Id. at 302. Miranda does not protect individuals from "a spontaneous admission made under circumstances not induced by investigating officers." See United States v. Figueroa, No. 04-CR-6106, 2005 WL 351935, at *3 (W.D.N.Y. Feb. 11, 2005), report and recommendation adopted, No. 04-CR-6106L, 2005 WL 638058 (W.D.N.Y. Mar. 18, 2005) (quoting United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997)).

Based on the foregoing, I find that Goolsby was not subjected to custodial interrogation at the time that he made any of the statements to Officer Miller. Upon effecting the traffic stop, Miller approached Goolsby's vehicle and asked for his driver's license. Goolsby responded that he did not have his license. Miller then told Goolsby that he had pulled him over for a traffic violation, to which Goolsby responded "you're right I'm sorry." Miller's questions and Goolsby's responses are typical dialogue that occurs in the course of an ordinary traffic stop, and are well within the "moderate number of questions" contemplated by the Court in Berkemer. Miller then said that he smelled marijuana in the vehicle, to which Goolsby responded that he had smoked earlier. Miller's statement, though it elicited an incriminating response, was also well

within the range of inquiries permissible in a routine traffic stop.[7]  Miller asked Goolsby to get out of the car, and Goolsby asked to speak to a supervisor. Nothing adduced at the suppression hearing suggested that a reasonable person in Goolsby's situation would have believed that he was being placed in custody or that he would not be allowed to soon go on his way. Accordingly, it is my Report and Recommendation that any statements made by Goolsby prior to the search of the vehicle are admissible and any motion to suppress such statements should be **denied.**

### Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress evidence and statements be **denied.**

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:      July 15, 2016
            Rochester, New York

---

[7] Indeed, in <u>Berkemer</u>, the police officers had stopped the vehicle, asked the respondent to exit the vehicle, performed a balancing test, and asked the respondent if he had been using intoxicants, to which he replied that "he had consumed two beers and had smoked several joints of marijuana a short time before." 168 U.S. at 423. The Supreme Court held that the statements admissible because the "suspect's freedom of action" during the traffic stop had not yet been curtailed to a degree consistent with a formal arrest. <u>Id.</u>

17

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby
**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.   See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**   Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."   **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:      July 15, 2016
            Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation.   Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed.   United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).